UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **XIANGLAN DONG, A.K.A. JING LI** | **CIVIL ACTION NO. 25-1883** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **PAM BONDI, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Petitioner Jing Li,[1] a detainee at Richwood Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 12]. For reasons that follow, the Court should grant Petitioner's request for release from custody.

### Background

Petitioner "is a native and citizen of The People's Republic of China." [doc. # 1, p. 3]. She entered the United States in May 1993, using the alias, Xiang Lan Dong. [doc. #s 1, p. 4; 12-1, p. 1]. "On May 12, 1993, the Immigration and Naturalization Service (INS), paroled the Petitioner into the United States . . . for the purpose of an exclusion hearing and issued her a Notice to Appear pursuant to Sections 212(a)(7)(A)(i)(I), 212(a)(7)(B)(i)(I) and 212(a)(7)(B)(i)(II) of the INA and released her from custody." [doc. # 1-2, p. 1].

---

[1] Petitioner Jing Li's "A-Number" is 078-291-368.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On April 2, 1997, Petitioner "was found ineligible for asylum[.]" [doc. # 1-2, p. 1]. "On November 18, 1998, the IJ ordered [Petitioner] removed in absentia." *Id.* Petitioner did not appeal the order. [doc. # 1, p. 5].

In May 2001, Petitioner was taken into ICE custody and then released. [doc. # 1, p. 5]. "Under the name Jing Li, she was again placed in removal proceedings, and on February 28, 2002, a second removal order was issued against her." *Id.* "After being released by ICE, [she] was required to wear an ankle monitor and report regularly—initially once a month, then once every three months, later once every six months, and eventually once a year. She fully complied with all ICE monitoring and reporting requirements." *Id.*

"On April 1, 2025, when [Petitioner] appeared for her routine order of supervision check-in, she was detained by ICE." [doc. # 1, p. 6].

"On April 15, 2025, Petitioner refused to cooperate with ERO by declining to fill out an application for a travel document to China." [doc. # 12, p. 2]. On June 26, 2025, however, Petitioner "assisted in completing a travel document request . . . ." *Id.* A "travel document was initially requested in July 2025." *Id.* On October 1, 2025, DHS "submitted an updated travel document request[,]" which was pending as of February 16, 2016. *Id.*

Petitioner filed the instant petition on November 25, 2025. [doc. # 1]. Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), she primarily claims that "she has been detained for more than six months, and her removal is not reasonably foreseeable" because:

> a) Twenty-six years have passed without removal. The sheer passage of time creates an overwhelming presumption that removal is not reasonably foreseeable. If removal were possible, it would have occurred within the twenty-six years since the order became final.
>
> b) China has consistently refused to accept its nationals subject to removal from the United States, particularly those who sought political asylum. There is no evidence this policy has changed regarding [Petitioner].

2

> c) Upon information and belief, ICE has not obtained and cannot obtain travel documents from China for [Petitioner's] removal.

*Id.* at 10.  Petitioner adds: "The government cannot rely on speculation or hope that someday, somehow, China might change its position.  *Zadvydas* requires concrete evidence that removal is reasonably foreseeable in the immediate future, not theoretical possibility at some indefinite point."  *Id.* at 11.

In turn, Respondents argue, "there will be no impediment to Petitioner's removal once her travel document is issued and received by DHS."  [doc. # 12, p. 3].  They add:

> DHS has submitted two requests for travel documents for purposes of completing Petitioner's removal. These ongoing efforts demonstrate a likelihood that Petitioner will be removed in the foreseeable future. . . . Petitioner cannot establish that ICE is incapable of executing her removal, or that her detention will be indefinite.

*Id.* at 5-6.

## Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

3

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, she has been detained 329 days (or 10 months, 23 days).  In addition, she meets her initial burden of providing good reason to believe that there is no significant likelihood of her removal in the reasonably foreseeable future.  Her order of removal became final on approximately March 30, 2002, at the latest.  And she has been detained since April 1, 2025.  Yet, for approximately 243 days (or 7 months, 29 days)—from when she assisted in completing a request for a travel document on June 26, 2025, to date—the Government has been unable to

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

4

obtain a travel document for her despite multiple attempts and despite her full cooperation since June 26, 2025.

Respondents do not rebut Petitioner's showing. They do not provide any evidence indicating that travel documents are forthcoming, that ICE has made meaningful progress in effectuating Petitioner's removal, or that Petitioner has not fully cooperated with ICE (again, since June 26, 2025, when she agreed to assist in completing a travel document request).

Respondents provide evidence demonstrating that they requested a travel document in July 2025, and in October 2025. The requests remain pending. Respondents do not indicate that they received any responses to the requests. From this showing, Respondents conclude that "Petitioner's removal is imminent."

That Respondents submitted two requests for a travel document which to date remain unanswered does not establish that removal is 'imminent' or is otherwise significantly likely to occur in the reasonably foreseeable future. Travel document requests can, for instance, be denied, ignored, or processed in the distant future (as opposed to the 'reasonably foreseeable future'). Further, that Respondents have not obtained a travel document following the first request submitted over seven months ago suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future. There is no evidence that Chinese officials have even received, reviewed, or responded to the travel document request. Respondents essentially present a request for a travel document followed by no indication of progress in over seven months and no indication that progress will occur.

DHS's updated request for a travel document on October 1, 2025, while indicative of some effort at progress, essentially constitutes the question, has there been any progress on the initial request for a travel document? After over seven months with no material response, the

answer appears to be, no. The longer a request for travel documents remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

Courts in this District have held that the government's burden to furnish evidence demonstrating that removal is significantly likely in the reasonably foreseeable future is not met by a pending request for travel documents alone. *See, e.g., Johnson v. Young*, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013), *report and recommendation adopted,* 2013 WL 1571272 (W.D. La. Apr. 12, 2013) (finding the argument that the Jamaican consulate had not yet refused to issue travel documents insufficient to meet the government's burden); *Fermine v. Dir. of Immigr. & Customs Enf't*, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007); (finding no significant likelihood of removal in the reasonably foreseeable future where ICE was continuing efforts to obtain a travel document and Trinidad had not yet refused the request).

Moreover, Respondents do not present any evidence to rebut Petitioner's argument that "China has consistently refused to accept its nationals subject to removal from the United States, particularly those who sought political asylum." While Petitioner does not present her own evidence in support, she could support the argument with evidence at a hearing or trial (to the extent she is not constrained by the applicable evidentiary rules).[4]

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[5] They do not, for example, provide any evidence that they have made progress in

---

[4] *See generally* FED. R. CIV. P. 56(c)(2).

[5] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh

obtaining travel documents, that they have been communicating with China about Petitioner's deportation, that China has recently accepted other deportees similarly situated to Petitioner, that China has an agreement or treaty with the United States affecting Petitioner's removal, or that China is willing to accept Petitioner.[6] In addition, while not dispositive, the undersigned finds it persuasive that Respondents had over 27 years to try and remove Petitioner after her first removal order became final, yet they waited until April 1, 2025, to detain her and finally *attempt* (futilely, to date) to remove her.

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this

---

resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[6] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[7]

## Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Jing Li's (also known as Xianglan Dong) petition for habeas corpus be **GRANTED**: Respondents, including the Warden of Richwood Correctional Center, shall (A) immediately release Petitioner from custody without bond under reasonable conditions of supervision to be established by an ICE deportation officer and (B) notify Petitioner's counsel of the exact location and time of her release no less than two hours before her release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[8] Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming her release.

---

[7] The undersigned finds no need to address any claim or request for relief not addressed herein. In addition, while Petitioner requests attorney's fees under the Equal Access to Justice Act ("EAJA"), recovery of attorney fees under the EAJA is not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).

[8] In other words, it is the intent of the Court that Petitioner should not be released only to be immediately taken back into custody. The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 24th day of February, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge

9